UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-21658-CIV-O'SULLIVAN
[CONSENT]

UNITED STATES OF AMERICA,
    Plaintiff,

v.

ALEXIS BROWN,
    Defendant.
_____/

## ORDER

THIS MATTER is before the Court following receipt of correspondence from attorney Joshua R.I. Cohen concerning a hearing held on February 13, 2013. Mr. Cohen has not filed a notice of appearance in the instant case and is not a member of the bar of this Court. Attached to this Order is a copy of Mr. Cohen's correspondence. Local Rule 7.7 states in pertinent part:

> Unless invited or directed by the presiding Judge, attorneys and any party represented by an attorney shall not: (a) address or present to the Court in the form of a letter or the like any application requesting relief in any form, citing authorities, or presenting arguments; or (b) furnish the Court with copies of correspondence between or among counsel, or any party represented by an attorney, except when necessary as an exhibit when seeking relief from the Court.

S.D. Fla. L.R. 7.7. Accordingly, the parties to this action and Mr. Cohen shall refrain from submitting correspondence to Chambers unless specifically requested by the undersigned or authorized by the Local Rules of this Court.

DONE AND ORDERED in Chambers at Miami, Florida this **22nd** day of April, 2013.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

All counsel of record

Copies mailed by Chambers to:

Alexis Brown
4747 Collins Avenue, Apt 411
Miami, FL 33140

Joshua R.I. Cohen
Law Office of Joshua R.I. Cohen, LLC
34-3 Shunpike Road # 114
Cromwell, CT 06416

**Law Office of Joshua R.I. Cohen, LLC**
The Student Loan Lawyer



34-3 Shunpike Road #114
Cromwell, CT 06416
Tel: 860-233-0338
Fax: 860-233-0339
jcohen@TheStudentLoanLawyer.com
www.TheStudentLoanLawyer.com

April 11, 2013

United States Magistrate Judge John J O'Sullivan
Federal Justice Building (James Lawrence King Building)
99 NE Fourth Street
Miami, Florida 33132

    Re: Case No. 12-CV-21658 - JAL

Dear Judge O'Sullivan:

It is with great concern that I write this letter to you regarding the Defendant, Ms. Alexis Brown. I know she is being sued by the U.S. Government for a Federal Student Loan, however, it appears there are material misrepresentations made on the record which will influence the outcome of this matter.

Ms. Brown sent me a copy of the transcript for the hearing on the Motion to Stay that took place on February 13, 2013. I am especially concerned about Attorney Navarro's representation that Ms. Brown is not allowed to consolidate her loans because of the on-going litigation. I've noted that Attorney Navarro has no authority for such a statement. This, is because of the Higher Education Act (HEA), 20 U.S.C. § 1078-3 titled Federal Consolidation Loans. This section makes it quite clear that a consolidation is allowed during litigation simply because there is an outline of explicit qualifications that disallow consolidation – if there is a judgment or a wage garnishment order. Neither of these apply to Ms. Brown. This is bolstered by 34 C.F.R. § 685.220, which was promulgated by the U.S. Department of Education (ED) to carry out the HEA. If Congress or ED had meant for litigation to be a barrier to consolidation, they would have stated such. Neither did, however.

I understand this letter may not carry weight with the Court as I openly admit I am not a member of the State or any District Court of Florida. I am a member of the Connecticut State and District Bars and have a national reputation for my practice of student loan law, which includes bringing a number of cases in which the industry was misapplying the HEA and corresponding CFR. You may also want to look at a case where an attorney hired by the Justice Department was found guilty of violating debt collection law because of its failure to comply with the HEA and CFR. *See* Arroyo v. Solomon & Solomon, P.C., 2001 U.S. Dist. LEXIS 12180 (E.D.N.Y. July 19, 2001), attached. Admittedly this is not an 11th Circuit case, but the HEA and CFR are Federal and should be applied equally throughout the land.

My concern with the denial for the Stay is that there is nothing forcing the ED to allow the consolidation. At this stage, Ms. Brown is left with no choice but to file an action against ED for illegally blocking her from consolidating – an action that will cost quite a bit of time and money, money that could be better spent on this loan and other basic needs of Ms. Brown. Further, an action by Ms. Brown would place ED

under the microscope at a time when the student loan industry is already undergoing scrutiny for poor management.

Your honor, I think it behooves you, the Court, and this Country to reconsider the Stay to force ED to rethink its position. Nothing good comes from a judgment in this matter because Ms. Brown has no assets that would not be recoverable without a judgment. The only thing gained here are attorney's fees by Attorney Navarro for bringing a claim that never should have been brought. It is my personal belief that had Attorney Navarro mentioned consolidation as a way to avoid litigation, Ms. Brown would have jumped at the chance to do so and this litigation would not be necessary.

I understand the argument that Ms. Brown was given ample opportunity to cure her debt prior to litigation. While I believe she was contacted by multiple debt collectors over the years of her default, I do not believe she was ever adequately appraised of her rights or the potential consequences in a meaningful way. I say this because of my experience. For the past 4 years, my practice has existed primarily of clients with student loan issues – issues that are partially to blame because of debt collectors' inability to comply with the HEA. I have brought class actions and individual claims, mostly based on the debt collector blocking a borrower from curing their default federal student loan, something a borrower can do by right. I have gained such a following that I teach consumer attorneys across the nation about how to practice student loan law.

There is a dearth of information about how to properly deal with student loans. Here we have another example; Attorney Navarro, an agent of the Justice Department, making misrepresentations in open Court that Ms. Brown cannot consolidate when this is a completely false statement, as the plain language of the HEA and corresponding CFR demonstrates. I urge you to intercede within your authority to allow the Stay and ultimately persuade the Government to allow Ms. Brown to consolidate her loan.

Thank you for your attention to this letter. Please feel free to contact me with any questions or concerns.

Sincerely,

Joshua RI Cohen
Attorney

Page 1




Caution
As of: Mar 28, 2013

ADALMINDA ARROYO and VALERIE TRANUMN, Plaintiffs, -against- SOLOMON & SOLOMON, P.C., Defendant.

99-CV-8302 (ARR)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 12180

July 19, 2001, Decided
July 19, 2001, Filed

**DISPOSITION:** [*1] Plaintiff's motion for summary judgment on first FDCPA claim granted.

**COUNSEL:** For Plaintiff: Jane Greengold Stevens, Brooklyn Legal Services, Federal Litigation Program, Brooklyn, NY.

For Defendant: Douglas M. Fisher, Solomon & Solomon, P.C., Albany, NY.

**JUDGES:** Allyne R. Ross, United States District Judge.

**OPINION BY:** Allyne R. Ross

**OPINION**

ORDER

ROSS, United States District Judge:

Plaintiff, Valerie Tranumn, brought an action alleging that defendant, Solomon & Solomon, P.C. ("Solomon"), violated her rights under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Specifically, plaintiff alleges that (1) Solomon violated her rights under 15 U.S.C. § 1692e by making false and misleading statements in an effort to collect a debt by demanding payments in amounts more than she could reasonably afford, contrary to her rights under 20 U.S.C. § 1078-6 of the Higher Education Assistance Act ("HEAA"); (2) Solomon violated her rights under 15 U.S.C. § 1692e by making false and misleading statements about her ability to renew eligibility for student loan assistance programs, [*2] contrary to her rights under 20 U.S.C. § 1078-6(b); and (3) Solomon's representative improperly gave plaintiff the impression that she was an attorney in an effort to collect a debt, in violation of 15 U.S.C. § 1692e(3). [1] Plaintiff seeks statutory and actual damages, as well as reasonable attorneys fees, under 15 U.S.C. § 1692k. The parties have filed cross-motions for summary judgment on each of these three claims. For the reasons stated below, the court grants plaintiff's motion for summary

judgment on her first claim and declines to reach the merits of plaintiff's remaining claims.

> 1  The complaint also alleges that Solomon violated the rights under the FDCPA of co-plaintiff Adalminda Arroyo. By order dated May 7, 2001, this court severed these cases, though they remain under the same case number. The motions assessed in this opinion relate solely to the claims made by Ms. Tranumn. Reference to Ms. Tranumn's "third claim" in this opinion refers to the fourth claim made by plaintiffs in their joint complaint.

[*3] *BACKGROUND*

The following relevant facts are undisputed unless otherwise noted. On approximately August 29, 1996, plaintiff executed a promissory note to secure a loan of $ 2,500 from Manufacturers Hanover Trust ("Hanover Trust") at 8% annual interest. See Pl. Notice of Motion, Ex. D. The loan was guaranteed by Northstar Guarantee, Inc. ("Northstar") and reinsured by the Department of Education under loan guaranty programs authorized under the HEAA, 20 U.S.C. 1071 et seq. Id. On November 20, 1988, plaintiff defaulted on the loan, and Hanover Trust filed a claim on the guarantee. Id. Northstar paid the claim of $ 2,952.32 and was reimbursed by the Department of Education pursuant to its reinsurance agreement with the Department. Id. On August 4, 1993, after failing to collect on the full amount of the debt, Northstar assigned the right and title of the loan to the Department of Education. Id.

The Department of Education referred the loan to the Department of Justice ("DOJ") for collection purposes, which contracted the task to Solomon. On July 19, 1999, the DOJ sent Ms. Tranumn a letter informing her that it had been charged with [*4] collecting her debt, and that it had referred this collection matter to Solomon with instructions to sue her. Id., Ex. E. Solomon subsequently sent plaintiff a collection notice on August 13, 1999. Id., Ex. F.

What transpired next is disputed in part. Plaintiff contends that she called Solomon in or around July 1999 and spoke with one of Solomon's representatives to discuss her debt. According to plaintiff, the representative informed her that she was required to make payments of $ 150 per month for three years in order to repay the debt. See Pl. Rule 56.1 Statement at P 7; Compl. at P 20. When plaintiff responded that she was on public assistance and could only afford to pay approximately $ 15-20 per month, Solomon's representative allegedly insisted that she was required to make monthly payments of $ 150. See Pl. Rule 56.1 Statement at P 8.

Solomon offers a slightly different version of events. In an affidavit submitted in support of Solomon's motion for summary judgment, Christina Albanese, the representative with whom plaintiff spoke on the phone, asserts that she first spoke with plaintiff on September 11, 1999, when Ms. Tranumn called in response to Solomon's [*5] August 13th collection letter. See Albanese Affid. at P 4. Ms. Albanese claims that she inquired whether plaintiff could pay the full amount of the debt and, when plaintiff stated that she could only pay approximately $ 15-20 per month, she informed plaintiff that Solomon could not enter into any payment plan with her until she had completed a financial disclosure form, which Ms. Albanese said she would send to plaintiff. [2] Id.

> 2  Ms. Albanese does state somewhat cryptically in her affidavit that she has, "pursuant to the general three year time period given to [Solomon] from the Department of Justice . . . been trained to obtain payments within that period to satisfy outstanding obligations." Albanese Affid. at P 6. This statement does not make clear whether she in fact told plaintiff in their conversation that she would be required to repay the loan in full within a three-year period.

Ms. Albanese's deposition testimony varies in certain respects from her affidavit. At her deposition, she testified [*6] that she believed she spoke with plaintiff on two occasions, once "at some point in August" and once in October. See Albanese Dep. at 29-30, Pl. Notice of Motion, Ex. C. In her deposition, she states that she explained the repayment criteria to plaintiff during their first conversation and sent her a financial disclosure form. Id. at 29. Ms. Albanese testified that the second conversation stemmed from plaintiff's phone call to inquire about, *inter alia*, the amount of the payments she would be required to make. Id. According to her testimony, Ms. Albanese informed plaintiff that ". . . as far as payment arrangement was concerned . . . the criteria would be for the three years, [and] that if [plaintiff] could pay that, she could start making payments to be applied to her account, but that [Albanese] could not put that as a formal payment

arrangement [because plaintiff had not yet] returned the [financial disclosure] form." *Id.* at 29-30. In sum, Ms. Albanese's deposition testimony reflects that she indicated to plaintiff that she would be required to repay the loan within no more than three years. *Id.* at 25-30.

## DISCUSSION

In ruling on a motion [*7] for summary judgment, judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "The burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists," *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994), but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "On summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962), but the non-moving party "must do more than show [*8] there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

In making the necessary showing, "conclusory allegations [by the non-moving party] will not suffice to create a genuine issue." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d.Cir. 1990). A "genuine" issue is one that could be decided in favor of the non-moving party based on the evidence by a reasonable jury. *Liberty Lobby*, 477 U.S. at 248, 106 S. Ct. at 2510. The role of the court in deciding a motion for summary judgment is not to decide issues of fact, but only to determine whether or not they exist. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d.Cir. 1991).

In her first claim, plaintiff alleges that Solomon violated 15 U.S.C. § 1692e by misleading her as to her rights under § 1078-6(a)(1)(A) of the HEAA, 20 U.S.C. §§ 1071 *et seq*. As discussed, *supra*, plaintiff secured a student loan from Hanover Trust which was guaranteed by Northstar. According to the evidence [*9] furnished by Solomon and provided by the Department of Education, plaintiff's loan was part of the Federal Family Education Loan Program (FFEL) of the HEAA, which covers four individual student loan programs -- Federal Stafford Loans, Federal PLUS, Federal SLS, and Federal Consolidated Loan Programs, each of which is defined in 34 C.F.R. § 668. *See* 34 C.F.R. §§ 600.2; 682.100. *See also* Pl. Notice of Motion, Ex. D. As a general matter, FFEL loans are secured from an eligible lender such as a banking institution like Hanover, and guaranteed by a guaranty agency such as Northstar. *See* 20 U.S.C. § 1085(d) (defining "eligible lender"). As was the case in connection with plaintiff's loan, the guaranty agency may enter into a reinsurance agreement with the Secretary of Education. Under this scheme, if a debtor defaults on a student loan, the lending institution can seek repayment of the loan from the guaranty agency which, if it is unable to secure repayment from the debtor, can in turn seek reimbursement from the Secretary pursuant to the reinsurance agreement it entered with the Department of Education. *See* 20 U.S.C. § 1078 [*10] (c)(1). Even after the Secretary reimburses the agency under this provision, the agency and, in certain circumstances, the Secretary, continue to seek repayment of the defaulted loan.

Section 1078-6(a)(1)(A) specifically governs these efforts by the Secretary of Education or a guaranty agency to collect defaulted FFEL loans for which the Secretary has already reimbursed the guaranty agency under the reinsurance program outlined in § 1078(c)(1). [3] Under § 1078-6(a)(1)(A), if a guaranty agency or the Secretary can secure twelve consecutive monthly payments under this standard, the loan is considered rehabilitated, and the guaranty agency or, if practicable, the Secretary, are required to attempt to sell the remainder of the loan to an eligible lender. This provision also mandates that, in seeking to collect payments for such defaulted loans, neither the Secretary of Education nor a guaranty agency may demand from the debtor monthly payments beyond what is "reasonable and affordable based upon the borrower's total financial circumstances." 20 U.S.C. § 1078-6(a)(1)(A).

> 3 By the time Solomon attempted to collect on plaintiff's defaulted loan, the Secretary of Education had reimbursed Northstar under their reinsurance agreement. *See* Pl. Notice of Motion, Ex. D.

[*11] In this case, plaintiff alleges that Solomon violated her rights under § 1692e of the FDCPA, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff's claim is premised on her assertion that Ms. Albanese did not represent to plaintiff at any time that, under the HEAA, she was required only to make monthly payments that were reasonable and affordable considering her financial circumstances. According to plaintiff, by demanding monthly payments well beyond what plaintiff could afford and beyond what she was required to pay under § 1078(a)(1)(A), Solomon provided false and misleading information in attempting to collect her debt, in violation of the FDCPA.

A. *Ms. Albanese's Actions Constituted a Misrepresentation of Plaintiff's Rights in Violation of the FDCPA*

There is no material factual dispute that Solomon, in attempting to collect plaintiff's debt, failed on more than one occasion to inform her of her right to make reasonable and affordable payments under the HEAA. First, the initial collection notice Solomon sent plaintiff [*12] informing her that it had been hired to collect an outstanding debt of $ 5,322.77 did not indicate that any payment plan involving reasonable payments was available to her under the HEAA. Rather, the letter informed her that she should pay the entire amount unless her records indicated that she did not owe this amount or if she disputed the validity of the debt. 4 *See* Def. Notice of Motion, Ex. C. Second, while Ms. Albanese does not state that she specifically demanded monthly payments of $ 150 from plaintiff, her testimony makes clear that she operated under the assumption that a debtor in plaintiff's circumstances was required to repay the debt in full within a three-year period and that she informed plaintiff of this in at least one of their conversations, a fact Solomon concedes. 5 *See* Albanese Affid. at P 6; Albanese Dep. at 29-30, Pl. Notice of Motion, Ex. C; Def. Rule 56.1 Statement of Facts at P 4. Significantly, Solomon presents *no* evidence that it informed plaintiff that, in the alternative to repaying the loan in full, she had the right to make reasonable and affordable payments under the HEAA. As such, the facts indicate that Ms. Albanese misrepresented plaintiff's [*13] rights in an effort to collect her debt in violation of 15 U.S.C. § 1692e.

4 Plaintiff does not allege that this letter was misleading in violation of 15 U.S.C. § 1692e, and the court makes no ruling on whether the letter by itself constitutes a violation of the FDCPA. Rather, the letter is cited as further evidence that plaintiff never was informed of her rights under the HEAA.

5 Ms. Albanese's instructions to plaintiff that she was required to repay the loan in full within three years effectively demanded monthly payments of approximately $ 150, which would be required in order to discharge the entire $ 5322.77 in that time period.

B. *Solomon is Bound by the HEAA*

Solomon asserts that it did not commit an FDCPA violation by demanding full repayment within three years because plaintiff's loan was not governed by § 1078-6(a). Specifically, Solomon asserts that § 1078-6(a), by its plain language, applies only to the Secretary of Education or to guaranty [*14] agencies, not to the Department of Justice ("DOJ") or to law firms working on its behalf. According to this argument, the statute's failure to mention the DOJ precludes any finding that Congress, in enacting the statute, intended to abrogate the DOJ's plenary power to conduct litigation.

This illogical and unsupported argument clearly fails. The court can conceive of no basis for the position that an agency of the federal government can immunize itself from clear, substantive statutory obligations merely by involving the DOJ as that agency's legal representative in a lawsuit. Congress enacted the HEAA and its amendments with the explicit purpose of encouraging individuals to take advantage of higher educational opportunities by making funding more readily available to individuals who could not, on their own, afford the costs of an education. *See, e.g.*, H.R. Rep. No. 99-383, at 6-7 (1985). Consistent with that purpose, § 1078-6(a) prohibits the government, acting through the Secretary, from demanding loan repayments that are unreasonable or unaffordable based upon the borrower's total financial circumstances. As plaintiff points out, allowing the government to avoid this statutory [*15] restriction on its collection efforts merely by transferring responsibility for the collection of defaulted loans to the DOJ would directly contravene the purpose of the statute. Although a government agency is certainly free to refer a matter for legal representation by the DOJ, the laws governing that

agency's actions are not abrogated by such a referral and must, therefore, be obeyed by DOJ. As the Fourth Circuit held in *Executive Bus. Media Inc. v. U.S. Dep't of Def.*, 3 F.3d 759 (4th Cir. 1993), "the Attorney General in representing a government agency is bound by the same laws that control the agency." *Id.* at 762.

Solomon's attempts to maneuver around this basic principle, apparently with the endorsement of the DOJ, are unconvincing. While it is true that the DOJ possesses plenary power over the conduct of litigation on behalf of the government, *see, e.g., United States v. California*, 332 U.S. 19, 67 S. Ct. 1658, 91 L. Ed. 1889 (1947), this power does not carry with it the authority to disregard laws promulgated by Congress. This is particularly true in the present case, in which the activity at issue can hardly be described [*16] as the conduct of litigation in the sense meant in cases granting the DOJ plenary power over federal litigation matters. Furthermore, the defendant's reference to 31 C.F.R. § 904.1 is of no avail. Although that regulation makes clear that the Secretary of Education must cease all contact with the borrower once a debt collection matter is referred to DOJ and that DOJ thus assumes "exclusive jurisdiction over the debts," nothing in the regulation supports the conclusion that DOJ takes this responsibility free of the legal obligations imposed on the Secretary. To the contrary, that the DOJ assumes full responsibility for the Secretary of Education on the matter logically indicates that any legal obligation binding on the Secretary necessarily binds the DOJ as well.

C. *Solomon Cannot Raise a Bona Fide Error Defense to this Claim*

In the alternative, Solomon argues that, if plaintiff should have been granted the right to make reasonable and affordable payments under § 1078-6(a), Solomon's efforts to collect plaintiff's debt in violation of this right was due to a bona fide error as defined by the FDCPA and, thus, it cannot be held liable for this FDCPA violation.

[*17] The FDCPA is a strict liability statute, *see Russell v. Equifax*, 74 F.3d 30, 33 (2d Cir. 1996), and the intent of the collector generally is assessed only in determining whether a plaintiff is entitled to any additional damages under 15 U.S.C. § 1692k. *See* 15 U.S.C. § 1692k(b). *See also Fasten v. Zager*, 49 F. Supp. 2d 144, 150 (E.D.N.Y. 1999). The statute, however, does provide an affirmative defense. Specifically, a defendant is absolved of liability for violating the Act if that defendant can demonstrate by a preponderance of the evidence that the violation was (1) unintentional, and (2) the result of a bona fide error "notwithstanding the maintenance of procedures reasonably adapted to avoid any such errors." *See* 15 U.S.C. § 1692k(c). *See also Pipelines v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) (noting that defense only available if violation was unintentional *and* resulted from a bona fide error in spite of the maintenance of procedures reasonably designed to prevent the type of error that occurred).

Solomon argues that [*18] it is entitled to assert this defense to plaintiff's first claim because its actions in attempting to collect plaintiff's debt were in accordance with its contract with the Justice Department -- which required Solomon to seek to collect debts within three-year periods -- and in accordance with its understanding of its obligations under the HEAA, an understanding communicated by "no less than the United States Attorney General['s] office." *See* Def. Reply Memo. of Law at 10-11. In short, Solomon argues that, because the DOJ believed it was not bound by § 1078-6(a) and instructed Solomon accordingly, it is entitled to relief from liability under § 1692k(c) of the FDCPA.

Solomon's attempt to raise a bona fide error defense fails. First, virtually every court to examine the issue, including the Second Circuit, has held that mistakes of law or reliance on erroneous legal advice cannot form the basis of a bona fide error defense. *See Pipelines*, 886 F.2d at 27. *See also Picht v. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001) (reliance on mistake in legal judgment in interpreting and applying state garnishment statute cannot constitute basis for bona [*19] fide error defense); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 779 (9th Cir. 1982); *Irwin v. Mascott*, 112 F. Supp. 2d 937, 959 (N.D. Ca. 2000); *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 591 (D. Md. 1999) (listing cases); *Sibley v. Firstcollect*, 913 F. Supp. 469, 472 (M.D. La. 1995); *Phillips v. Amana Collection Services*, 1992 U.S. Dist. LEXIS 13558, 1992 WL 227839, *6-7 (W.D.N.Y. Aug. 25, 1992); *Scott v. Jones*, 1991 U.S. Dist. LEXIS 15798, 1991 WL 156060, *4 (W.D. Va. March 1, 1991). Insofar as the essence of Solomon's position is that it acted in reliance on the erroneous legal advice it received from the DOJ, Solomon is precluded from invoking the bona fide error defense.

Moreover, Solomon cannot demonstrate by a preponderance of the evidence at trial that Ms. Albanese's error was unintentional and that it was committed despite the maintenance of procedures reasonably adapted to prevent that error. In fact, the evidence presented is to the contrary. First, Ms. Albanese's testimony makes clear, and the court cannot envision how this could be otherwise, that she acted intentionally in informing plaintiff that she would be required [*20] to repay her loan in full within three years. See Albanese Dep. at 14, 25-26, 29-30, Pl. Notice of Motion, Ex. C (criteria was that loans must be paid within three years, and she instructed plaintiff accordingly). Second, while Solomon attached voluminous training and education materials to demonstrate its efforts to ensure its employees' compliance with the FDCPA, none of these materials indicate procedures reasonably adapted to prevent FDCPA violations stemming from misrepresentations of debtors' rights under § 1078-6(a) such as that committed by Ms. Albanese. [6] On the contrary, Ms. Albanese asserts that she was, in effect, specifically trained to violate this provision of the HEAA. See Albanese Affid. at P 6 ("pursuant to the general three year time period given to our office from the Department of Justice, I have been trained to obtain payments within that three year period to satisfy outstanding obligations").

> 6  Nor would one expect Solomon to have established such procedures in light of Solomon's admission that it has operated under the erroneous legal assumption that the DOJ, and by extension, its own collection activities, were not bound by the obligations set forth in § 1078-6(a).

[*21] Because mistakes of law and reliance on erroneous legal advice cannot form the basis of a bona fide error defense, and because Solomon has failed to demonstrate that its violation was unintentional and in spite of procedures reasonably designed to prevent this violation, its bona fide defense fails, and it is liable for its violation of plaintiff's rights under 15 U.S.C. § 1692e.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment on her first FDCPA claim is granted. Because a single violation of the FDCPA suffices to attach liability to a defendant, the court need not address plaintiff's additional FDCPA claims. See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993); Young v. Citicorp Retail Services, Inc., 1997 U.S. Dist. LEXIS 22669, *14 n.2, 1997 WL 280508, *5, n.2 (D. Conn. May 19, 1997); Austin v. Great Lakes Collection Bureau, Inc., 834 F. Supp. 557, 559 (D. Conn. 1993). In her complaint, plaintiff seeks statutory and actual damages and reasonable attorneys fees. The parties are instructed to brief the issue of damages according to the following schedule: Plaintiff's brief must be served by August 10, 2001; [*22] defendant's brief must be served by August 31, 2001; plaintiff's reply, if any, must be served by September 10, 2001. The fully-briefed motion must be served and filed by plaintiff, with courtesy copies to chambers, by September 10, 2001. This schedule may not be altered without permission of the court.

SO ORDERED.

Allyne R. Ross

United States District Judge

Dated: July 19, 2001

Brooklyn, New York